IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS WADE BUCK, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-08-272 |
| | § | |
| NATHANIEL QUARTERMAN, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS  DIVISION, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER GRANTING
## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 11) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1).   Having considered the motion, the response in opposition (Document No. 12), the claims raised by Petitioner in his § 2254 Application (Document No. 1), the summary judgment evidence, and the applicable law, the Court ORDERS[1], for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 11) is GRANTED, Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and this case is DISMISSED WITH PREJUDICE.

## I.      Introduction and Procedural History

Thomas Wade Buck ("Buck") is currently incarcerated in the Texas Department of Criminal

---

[1] On July 7, 2008, pursuant to the parties'  consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings.  *See* Document No. 15.

Justice, Correctional Institutions Division, as a result of a 2005 felony conviction in the 228th District Court of Harris County, Texas, for aggravated assault with a deadly weapon, Cause No. 1006848. Buck was charged by indictment with that offense on December 17, 2004, and was found guilty by a jury on October 20, 2005, which also found the prior conviction alleged in the Indictment to be true, and which sentenced Buck to life imprisonment. Buck's conviction was affirmed on appeal on October 12, 2006. *Buck v. State*, No. 01-05-01009-CR. Buck did not file a petition for discretionary review.

On September 4, 2007, Buck filed a state application for writ of habeas corpus. That application was denied by the Texas Court of Criminal Appeals on January 9, 2008, on the findings of the state trial court without a hearing. *Ex parte Buck,* Application No. WR-68,963-01. This § 2254 proceeding, filed by Buck on or about January 23, 2008, followed. Respondent has filed a Motion for Summary Judgment (Document No. 11), to which Buck has filed a response in opposition (Document No. 12). This § 2254 proceeding is therefore ripe for ruling.

## II.   Factual Background

The factual background, as set forth by the Texas Court of Appeals in its written opinion affirming Buck's conviction is as follows:

> On November 9, 2004, beginning around 10:00 a.m., the complainant, Heather Fleming, and [Buck] were drinking at [Buck's] apartment in Baytown. The complainant lived in the same apartment complex as [Buck]. The two arranged to ride with Craig Castilaw to Louisiana in his vehicle. Later that evening, the three left for Louisiana. [Buck] brought beer in the car with them, and during the trip, they stopped and purchased more beer in Beaumont. While in the car, [Buck] became increasingly intoxicated and agitated. [Buck] and the complainant began arguing about a cell phone call, and the argument escalated from yelling to physical wrestling. [Buck] put out cigarette butts on the complainant and hit her in the back of the head and face.

2

When the complainant and [Buck] began swinging at each other, Castilaw turned around and began driving back to Baytown. [Buck] threatened Castilaw not to stop driving and not to pull the car over. [Buck] threatened the complainant not to call the police for help and threatened to kill her.

They arrived at the complainant's and [Buck's] apartment complex in Baytown around 2:00 a.m. on November 10, 2004. [Buck] got out of the car and broke a beer bottle. Castilaw witnessed [Buck] drag the complainant out of the car by her hair. The complainant was struggling and yelling. After Castilaw saw [Buck] hit the complainant with the bottle, he left to call 9-1-1 for help.

[Buck] dragged the complainant out of the car by her hair and placed himself on top of her with his knees in his chest. With the bottle in his hand, [Buck] asked the complainant "if she was ready to meet her Maker" and cut her throat in a back and forth motion. He told her that her face was not going to be "so beautiful anymore" and sliced her face with the bottle. He then took the bottle and placed it over her throat and motioned that he would cut her there. The complainant heard police sirens, and then [Buck] told her, "I'm going to let you live because I'm a Christian and God is going to forgive me for what I've done here tonight."

Sergeant Pamela Erickson of the Baytown Police Department arrived on the scene. Sergeant Erickson witnessed [Buck's] hovering on top of the complainant and getting up off of her. [Buck] had bloody hair on his hands, and the complainant had blood streaming down her face.

Officers Russell Krutsinger and Jessica Stombaugh also arrived at the scene and observed the complainant's condition and a broken beer bottle, blood, and clumps of bloody hair. Detective Steve Jones investigated the assault and testified that the broken beer bottle in question was capable of causing serious bodily injury or death.

*Buck v. State*, No. 01-05-01009-CR at 2-4.

### III.   Claims

Buck raises eight claims in his § 2254 application[2]:

1.      That the State suppressed, and the trial court disallowed, favorable DNA evidence;

---

[2] Though ordered and numbered differently, these are essentially the same claims identified by Respondent in his Motion for Summary Judgment.

2.      That he was denied his Sixth Amendment right to call witnesses in his defense and cross examine the witnesses against him;

3.      That the State offered the perjured testimony of Craig Castilaw;

4.      That he was denied a fair trial by virtue of misleading statements by the prosecutor that he had cut the complainant's throat, the jury having viewed him in handcuffs, and the improper admission of a statement he made to the Department of Health and Human Services;

5.      That there was insufficient evidence to support his conviction;

6.      That his trial counsel was ineffective for failing to call "Paula," the manager at the Logan Point Apartments, as a witness for the defense;

7.      That the prosecutor engaged in misconduct my misleading the jury and by suggesting that jurors do "homework"; and

8.      That the jury charge was erroneous.

In his direct appeal, Buck raised an insufficient evidence claim and a claim challenging the failure of the trial court to include a lesser included offense instruction in the jury charge. In his state application for writ of habeas corpus, the same eight claims set forth above were alleged. The Texas Court of Criminal Appeals, in denying Buck's state application, rejected Buck's insufficient evidence claims on state law procedural grounds, and the rest on the merits.

Respondent argues in his Motion for Summary Judgment that no relief is available to Buck on the claims the Texas Court of Criminal Appeals rejected on state law procedural grounds because Buck has not established cause, prejudice or actual innocence to overcome the state law procedural bar. As for the claims the Texas Court of Criminal Appeals rejected on the merits, Respondent argues that no relief is available on those claims under § 2254(d) because the Texas Court of Criminal Appeals' adjudication of the claims was not contrary to or an unreasonable application of clearly established Federal law as established by the Supreme Court of the United States nor was it based

on unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## IV.   Standard of Review

### A.   § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'"  *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*,

538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams*, 529 U.S. at 405-406).  A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000).  In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1) (2000).  *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding.  Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary

6

responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable.").  Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative.  In addition, the correctness of the state court's decision is not determinative.  As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted).  Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning.  *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

**B.      State Law Procedural Bar**

Federal courts are precluded from considering claims which were rejected by the last state court to have considered them on the basis of a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).  In order for a state court's rejection of a habeas claim to act as a procedural bar to review in a federal habeas proceeding, the state court must, in a plain statement, determine that its rejection of the claim rests on adequate and independent state procedural grounds. *Harris*, 489 U.S. at 261; *Michigan v. Long*, 463 U.S. 1032, 1042 (1983).  Once a state court has relied on a procedural default for rejecting a habeas claim, a federal court in a federal habeas proceeding cannot review such a claim unless the petitioner shows cause and prejudice associated with the default or shows that absent a review of the claim by a federal court a fundamental miscarriage of justice will result. *Coleman*, 501 U.S. at 750.  A fundamental

miscarriage of justice occurs when a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), *cert. granted*, 502 U.S. 965 (1991), *and aff'd*, 505 U.S. 333 (1992).

## V.   <u>Discussion</u>

### A.   DNA evidence claims (claim one)

In his first claim, Buck complains that the State suppressed favorable evidence that none of his DNA was found on the beer bottle that he allegedly used to assault the complainant. In addition, Buck complains that the trial court improperly refused to allow the admission of that favorable evidence.

Buck raised this claim in his state application for writ of habeas corpus. The Texas courts rejected that claim when it concluded that Buck had "failed to demonstrate that his conviction was improperly obtained or that he is being improperly confined." *Ex Parte Buck*, WR 68-963-01 at 100. The Texas courts' rejection of Buck's suppression of evidence claim is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In order to prevail on a suppression of evidence claim, however, it must be shown that evidence was actually suppressed by the prosecution

and that the suppressed evidence was material. *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999) ("There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."). Evidence of which the defendant is aware does not constitute suppressed evidence within the meaning of *Brady*.  *See generally United States v. Ramirez*, 810 F.2d 1338, 1343 (5th Cir.), *cert. denied*, 484 U.S. 844 (1987); *United States v. Fogg*, 652 F.2d 551, 559 (5th Cir. 1981), *cert. denied*, 456 U.S. 905 (1982).  Evidence is material under *Brady* if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Here, the record shows that the defense had in its possession the allegedly favorable DNA evidence.  S.F. Vol. 3 at 174-182.  In addition, the record shows that such evidence was admitted at trial.  *Id.*  Because the record refutes Buck's claims, no relief is available on the claims under       § 2254(d).

**B.      Confrontation claim (claim two)**

In his next claim, Buck complains that he was unable to fully cross-examine the complainant, who was the main witness against him.  According to Buck, the trial court improperly disallowed him from questioning the complainant about her character, her prior allegations of assault against other men, and her psychiatric history.[3]

Buck raised this claim in his state application for writ of habeas corpus.  In rejecting Buck's

---

[3] Buck also alleged that he was denied his right to call witnesses in his defense.  Because Buck did not identify <u>any</u> witness he was precluded from calling to testify on his behalf, this claim is conclusory and worthy of no relief.

claim, the Texas courts generally concluded that Buck had "failed to demonstrate that his conviction was improperly obtained or that he is being improperly confined." *Ex Parte Buck*, WR 68,963-01 at 100.   That rejection of Buck's claim is not contrary to or an unreasonable application of clearly established Federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

"In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the Constitution, 'to be confronted with the witnesses against him.'" *Lilly v. Virginia*, 527 U.S. 116, 123 (1999) (quoting U.S. CONST. amend. VI).   That right includes, primarily, the right of cross-examination, *Douglas v. Alabama*, 380 U.S. 415, 418 (1985), for "[c]ross examination is the principal means by which the believability of a witness and the truth of his testimony are tested."   *Davis v. Alaska*, 415 U.S. 308, 316 (1974).   Under the confrontation clause, cross-examination, whether related to prior instances of bad conduct or not, must be allowed if such cross-examination would reveal a witness' "biases, prejudices or ulterior motives . . . as they may relate directly to issues or personalities in the case at hand".   *Id.*   In contrast, there is no right under the Confrontation Clause to "impeach the general credibility of a witness with evidence of prior bad acts."   *Cloud v. Thomas*, 627 F.2d, 743 (5th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981); *see also United States v. Rocha*, 916 F.2d 219, 242 (5th Cir. 1990), *cert. denied*, 500 U.S. 934 (1991).

In this case, the record shows that defense counsel, on cross-examination, questioned the complainant about her marital status, and highlighted certain discrepancies in her testimony.   Defense counsel was not allowed to question the complainant before the jury about prior assault claims she made against other men, the trial court finding that such questioning fell outside that allowed under

TEX. R. EVID. 608. Defense counsel was also not allowed to question the complainant before the jury about her psychiatric history, the trial court finding such questioning not relevant. In connection with the rulings limiting counsel's cross-examination, the complainant revealed that she had, on only one prior occasion, accused another of assault. In addition, she stated that while she was on anti-depressants at the time of the assault made the basis of this case, she had not been hospitalized or received any other psychiatric or psychological treatment. Given the record, the trial court's rulings, TEX. R. EVID. 608[4], and the very limited impeachment information that would have been gained if counsel were allowed to question the complainant about past assaults and her psychiatric history, the state courts did not unreasonably apply clearly established Federal law to Buck's Sixth Amendment confrontation clause claim. As such, no relief is available on this claim under § 2254(d).

### C.    Perjured testimony claim (claim three)

In his next claim, Buck complains that the State offered the perjured testimony of Craig Castilaw. According to Buck, Castilaw testified untruthfully that Buck was the aggressor, when in fact it was the complainant who first attacked Buck. Buck further maintains that Castilaw's perjury is evidenced by his own admission at trial that he stole $100.00 from Buck.

Buck raised this perjured testimony claim in his state application for writ of habeas corpus. In rejecting the claim, the Texas courts held that Buck had failed "to allege sufficient facts which, if true, would entitle him to relief on his claim that one of the State's witnesses committed perjury at trial in the primary case." *Ex Parte Buck*, WR 68,963-01 at 99. The Texas courts' rejection of

---

[4]T EX. R. EVID. 608(b) provides:

**Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

Buck's perjured testimony claim is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented.

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). To be entitled to relief on a claim that the State used perjured testimony, it must be shown (1) that the evidence presented was false; (2) that the evidence was material; and (3) that the prosecution knew that the evidence was false. *United States v. Blackburn*, 9 F.3d 353, 357 (5th Cir. 1993), *cert. denied*, 513 U.S. 830 (1994); *Shaw v. Estelle*, 686 F.2d 273, 275 (5th Cir. 1982), *cert. denied*, 459 U.S. 1215 (1983). The use of perjured testimony is material "only where 'the false testimony could in any reasonable likelihood have affected the judgment of the jury.'" *Knox v. Johnson*, 224 F.3d 470, 478 (5th Cir. 2000) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)), *cert. denied*, 532 U.S. 975 (2001). "'To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed by the record.'" *United States v. O'Keefe*, 128 F.3d 885, 894 (5th Cir. 1997), *cert. denied*, 523 U.S. 1078 (1998) (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). Discrepancies in testimony alone do not establish the knowing use of perjured testimony. *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *see also Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001) ("Conflicting or inconsistent testimony is insufficient to establish perjury.").

Here, Buck came forth with no evidence in the state habeas proceeding, and has come forth with no evidence in this § 2254 proceeding, that Castilaw testified falsely at trial. While the record

does reflect that Castilaw admitted at trial that he took money from Buck, money that Buck had promised him for returning to Baytown, S.F. Vol. 3 at 35, that testimony does not *in any way* support a conclusion that Castilaw committed perjury.  Because there is no evidence of any perjury by Castilaw, the state trial courts' rejection of Buck's perjured testimony claim was not unreasonable within the meaning of § 2254(d), and no relief is available to Buck on this claim.

### D.    Fair trial claims (claim four)

In his next claim, Buck complains that he was denied a fair trial by virtue of: (1)  misleading statements made by the prosecutor that he had cut the complainant's throat; (2) the jury having viewed him in handcuffs; and (3) the improper admission of a statement he made to the Department of Health and Human Services.  Each of these fair trial allegations was made by Buck in his state application for writ of habeas corpus.  The Texas courts rejected each claim.  The Texas courts' rejection of Buck's fair trial claims is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence.

The record shows that the prosecutor's statements about Buck having cut the complainant's throat were not misleading and were supported by significant evidence.  Besides the testimony of the complainant, Castilaw, and the officers that responded at the scene, numerous photographs were offered into evidence showing the cuts and lacerations on the complainant's neck.  State's Exhibits 37-40, 46-48.  In addition, significant medical evidence was submitted establishing the nature of the complainant's cuts and wounds on her neck and face.  Tr. 42-117.  The prosecutor's statements were not misleading and did not affect the fairness of Buck's trial.

In addition, the record of the proceedings does not support Buck's claim that he was viewed

13

in handcuffs or that an inculpatory statement by him was admitted into evidence.  What the record does reveal is that any statement Buck made to police was not offered into evidence.  *See* S.F. Vol. 3 at 121-125.  In addition, while the record clearly shows that Buck refused to attend the punishment phase, no mention is made anywhere of Buck being handcuffed during the guilt-innocence stage of the trial.  Given the absence of any evidence in the record to support Buck's allegations, the state courts' rejection of Buck's fair trial claims was not unreasonable within the meaning of § 2254(d).  Thus, no relief is available to Buck on his fair trial claim(s).

### E.    Insufficient evidence claims (claim five)

In his next claim, Buck complains that the evidence was factually and legally insufficient to support his conviction.  According to Buck, there was no DNA evidence connecting him with the beer bottle, and no medical evidence that the complainant's throat had been cut.

Buck raised this claim in his direct appeal, and in his state application for writ of habeas corpus.  The claim was rejected on the merits in Buck's direct appeal, and rejected on state law procedural grounds in the state habeas proceeding.  In particular, the Texas Court of Criminal Appeals concluded in the state habeas proceeding that Buck's "challenges to the sufficiency of the evidence are not cognizable in post-conviction habeas proceedings." *Ex Parte Buck*, WR 68,963-01 at 99.  Given the state law procedural rejection of Buck's claim, as well as Buck's failure to establish cause and prejudice associated with his failure to properly raise the claim with the state courts, or that he is actually innocent, Buck's sufficiency of the evidence claim is procedurally barred from review herein. *See Caldwell v. Dretke*, 2005 WL 1962599 (S.D.Tex.2005); *Moore v. Dretke*, 2005 WL 1773615 (S.D.Tex.2005); *Havens v. Dretke*, 2005 WL 1150169 (N.D.Tex.2005).  Moreover, even if the claim were not procedurally barred from review, given the evidence in the record, and that

recited by the Texas Court of Appeals, a rational jury could easily have found the existence of facts

necessary to establish the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 325

(1979).   Accordingly, no relief is available to Buck on his insufficient evidence claim(s).

### F.      Ineffective assistance of counsel claim (claim six)

In his next claim, Buck complains that his trial counsel was ineffective for failing to call

"Paula," the apartment manager at the apartments where both he and the complainant resided, to

testify for the defense.   According to Buck, "Paula" could have testified about the complainant's

mental problems, having banned her from the apartment complex's front office, as well as her

"stalking" of Buck.

Buck raised this claim in his state application for writ of habeas corpus.   The Texas courts

rejected the claim as follows:

> In all things, [Buck] fails to allege sufficient facts which, if true, would show that
> counsel's conduct fell below an objective standard of reasonableness and that, but for
> counsel's alleged deficient conduct, there is a reasonable probability that the result of
> the proceeding would have been different.   *Strickland v. Washington*, 466 U.S. 668,
> 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986)
> (adopting *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434
> (Tex. Crim. App. 1992) (defining two-part *Strickland* standard).

That rejection was not contrary to or an unreasonable application of clearly established Federal law,

nor was it based on an unreasonable determination of the facts in light of the evidence presented.

Ineffective assistance of counsel claims are generally measured by reference to the clearly

established federal law set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668

(1984).   Under *Strickland*, to be entitled to relief on an ineffective assistance of counsel claim, a

petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him

to the extent that a fair trial could not be had.   *Id*. at 687.   Deficiency is judged by an objective

reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

When a habeas petitioner alleges that his counsel was ineffective for failing to call witnesses at trial, relief is only available if the petitioner can identify the witness who should have been called, show that a witness's testimony would have helped him, and demonstrate that the witness would have testified to certain facts or information at trial. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Here, as in the state habeas proceeding, Buck fails to show that "Paula" would have testified favorably for the defense, and that her testimony would have affected the outcome of the trial. As such, the state courts' rejection of Buck's ineffectiveness claim was reasonable within the meaning of § 2254(d). No relief is available on Buck's ineffectiveness claim.

### G.   Prosecutorial Misconduct Claims (claim seven)

In his next claim, Buck complains that the prosecutor misled the jury with statements that Buck cut the complainant's throat. In addition, Buck complains that the prosecutor invited the jury to conduct an independent investigation with comments that they should "go home" and do their "homework."

A federal habeas petitioner who claims that the prosecutor engaged in improper jury argument

has the burden of establishing that the prosecution's argument was improper and that such argument was so prejudicial that it rendered the trial fundamentally unfair. *Rushing v. Butler*, 868 F.2d 800, 807 (5th Cir. 1989); *Whittington v. Estelle*, 704 F.2d 1418, 1421 (5th Cir.), *cert. denied sub nom Whittington v. McKaskle*, 464 U.S. 983 (1983). A trial is rendered fundamentally unfair by improper jury argument if, in the context of the entire trial, the improper argument was related to crucial, critical and highly significant factors in the case. *Ortega v. McCotter*, 808 F.2d 406, 410-411 (5th Cir. 1987); *Lowery v. Estelle*, 696 F.2d 333, 342 (5th Cir. 1983).

Here, as set forth above, the evidence showed that the complainant's throat <u>was</u> cut by Buck using a broken beer bottle. In addition, there is no evidence at all in the record that the prosecutor told or suggested to the jury that they needed to do "homework". Because the prosecutor's comments about the complainant's throat being cut were supported by the evidence, and because there is no evidence in the record that the prosecutor made an improper comment to the jury that they needed to do their "homework," the Texas courts' rejection of these claims was reasonable and in accord with clearly established Federal law. Accordingly, no relief is available on Buck's prosecutorial misconduct claims under § 2254(d).

## I.     Jury charge claim (claim eight)

In his final claim, Buck complains that the jury charge was erroneous because it made mention of the complainant's throat being cut. As with all of Buck's other claims, this claim was raised by Buck in his state application for writ of habeas corpus, and rejected by the Texas courts on the merits. This rejection of Buck's jury charge claim is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented.

To be entitled to federal habeas corpus relief on an improper jury instruction claim, a habeas petitioner must establish that the erroneous instruction was so prejudicial that it negatively affected the outcome of the trial. *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir.), *cert. denied*, 464 U.S. 1002 (1983). An improper jury instruction violates a defendant's constitutional rights if the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In a collateral proceeding, such as this, the question is "not merely whether 'the instruction is undesirable, erroneous, or even universally condemned,'" but "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* Given this standard, it is rare that an improper jury instruction will warrant the reversal of a criminal conviction; it is even more rare that an improper jury instruction will warrant the reversal of a criminal conviction if an objection to the allegedly improper instruction has not been made in the trial court. *Id.* Finally, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155.

Here, Buck's only complaint about the jury charge is that it improperly stated that the complainant's throat was cut. Buck does not cite to which part of the jury charge contained such a statement and a review of the entire jury charge, both on guilt-innocence, and on punishment, reveal no mention of the complainant's throat having been cut. Tr. 164-171; 173-179. While the prosecutor may have argued to the jury that Buck did cut the complainant's throat, that argument was, as set

forth above, supported by the evidence.  Accordingly, there was no error in the jury charge as alleged by Buck, and this claim also fails under § 2254(d).

## VI.   <u>Conclusion and Order</u>

Based on the foregoing and the conclusion that Buck is either entitled to no relief in this proceeding under § 2254(d) or his claims are procedurally barred, the Court

ORDERS that Respondent's Motion for Summary Judgment (Document No. 11) is GRANTED, Petitioner's Federal Application for Writ of habeas Corpus (Document No. 1) is DENIED, and that this § 2254 proceeding is DISMISSED WITH PREJUDICE on the merits.  It is further

ORDERED that a Certificate of Appealability is DENIED.  A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001).  When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was

correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Given the claims raised herein as well as the rejection of Petitioner's claims by the Texas courts, the Court determines that reasonable jurists would not find the assessment of Petitioner's constitutional claims or the application of the procedural ruling to be debatable or wrong. Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 2nd day of February, 2009.


Frances H. Stacy
United States Magistrate Judge